# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

|  |  |  |
|---|---|---|
| MICHAEL BRACEY, | ) | |
| | ) | |
| Movant, | ) | |
| v. | ) | Cv. No. 2:12-cv-02437-JPM-dkv |
| | ) | Cr. No. 2:10-cr-20274-JPM-1 |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

## ORDER DIRECTING CLERK TO UPDATE DOCKET
## WITH INMATE'S CURRENT ADDRESS
## ORDER DENYING MOTION UNDER 28 U.S.C. § 2255
## ORDER DENYING CERTIFICATE OF APPEALABILITY
## AND
## ORDER CERTIFYING APPEAL NOT TAKEN IN GOOD FAITH

On June 7, 2012, Defendant Michael Bracey, Bureau of Prisons registration number 00073-193, an inmate at the Federal Medical Center in Butner, North Carolina, filed a motion pursuant to 28 U.S.C. § 2255 ("§ 2255 motion"). (ECF No. 1.) On May 28, 2013, the Court directed the United States to respond to the motion to vacate. (ECF No. 3.) On August 14, 2013, the Court entered a second order directing the United States to respond. (ECF No. 6.) On December 13, 2013, the United States filed an answer contending that Defendant's motion is without merit. (ECF No. 18.) On December 16, 2013, the United States filed an amended answer supported by exhibits. (ECF Nos. 20 & 21.). For the reasons that follow, Bracey's § 2255 motion is DENIED, and a certificate of appealability is DENIED. The Court also finds that an appeal would not be taken in good faith. Leave to appeal in forma pauperis is DENIED.

## I.     BACKGROUND TO MOTION

On July 27, 2010, a federal grand jury returned an indictment charging Bracey with one count of possession of a firearm after a felony conviction, in violation of 18 U.S.C. § 922(g)(1) (Count One) and one count of false and fictitious written statement regarding lawful acquisition of a firearm, in violation of 18 U.S.C. § 922(a)(6) and § 924(a)(2) (Count Two).  (Criminal Case ("Cr.") ECF Nos. 1-3.)  On September 28, 2010, Bracey waived his right to a jury trial and pled guilty to Counts One and Two pursuant to a written plea agreement.  (Cr. ECF Nos. 20, 22-23.)

## PLEA AGREEMENT

**The full and complete plea is as follows:**

The following constitutes the Plea Agreement reached between the United States, represented by Edward L. Stanton, Ill, United States Attorney for the Western District of Tennessee, and R. MATTHEW PRICE, Assistant United States Attorney, the defendant, MICHAEL BRACEY, a/k/a Michael Bracy, Michael Brecey, Timothy Estes, and Michael Edward Bracey (hereinafter only referred to as MICHAEL BRACEY), represented by DANIEL JOHNSON, defense counsel.

Michael Bracey agrees that he will enter a voluntary plea of guilty to counts One and Two of the indictment.  Michael Bracey agrees that he is entering a voluntary plea of guilty to counts One and Two of the indictment because he is, in fact, guilty of the offenses charged in these counts.

Given the facts in the possession of the United States at the time of the writing of this agreement, the United States does not oppose Michael Bracey receiving acceptance of responsibility credit pursuant to U.S.S.G. § 3E1.1. Michael Bracey understands that if the United States receives information between the signing of this agreement and the time of the sentencing that he has previously engaged in, or if he engages in the future, in conduct inconsistent with the acceptance of responsibility, including, but not limited to, participation of any additional criminal activities between now and the time of sentencing, this position could change.  Further, Michael Bracey understands that whether or not acceptance of responsibility credit pursuant to § 3E1.1 is granted is a matter to be determined by the District Court.  Failure of the District Court to grant acceptance of responsibility credit is not a basis for Michael Bracey to withdraw his guilty plea.

Michael Bracey has indicated his desire to cooperate with the United States in the investigation and prosecution of others. The United States agrees to consider making a motion pursuant to § 5K1.1 of the United States Sentencing Guidelines on behalf of Michael Bracey at the time of his sentencing. Michael Bracey understands that the **only** promise being made is to **consider** a motion pursuant to § 5K1.1. **This is <u>not</u> a promise to make such a motion**. The decision whether to make a motion pursuant to § 5K1.1 is within the sole discretion of the United States. The decision whether or not to make such a motion will be made only after it has been determined that Michael Bracey has given complete and truthful cooperation and/or testimony in the matters under investigation and prosecution. Michael Bracey understands that if his testimony is anything but complete, truthful, and candid, the United States will make the sentencing court aware of this, will seek enhancement of his sentence based upon any lack of candor or truthfulness, and further will prosecute Michael Bracey for any crimes that might be provable. Michael Bracey also understands that any new criminal activity would be another reason not to make such a motion.

Michael Bracey agrees and understands that any statement made in the course of the plea colloquy may be used against him in any criminal prosecution. Michael Bracey knowingly, intelligently and voluntarily waives any objection based on Fed. R. Evid. 410.

Michael Bracey agrees and understands that a $200 special assessment is due to the United States District Court Clerk's Office at the time of sentencing.

Michael Bracey understands that 18 U.S.C. § 3742 gives him the right to appeal the sentence imposed by this Court. Acknowledging this, he knowingly and voluntarily waives his right to appeal any sentence imposed by the Court and the manner in which the sentence is determined, so long as the sentence is within the statutory maximum as specified by the Court. This waiver is made in exchange for the concessions made by the United States in this Plea Agreement. The waiver in this paragraph does not apply to claims relating to prosecutorial misconduct and ineffective assistance of counsel.

Michael Bracey agrees that this Plea Agreement constitutes the entire agreement between himself and the United States and that no threats have been made to induce him to plead guilty. By signing this document, Michael Bracey acknowledges that he has read this agreement, has discussed it with his attorney, understands it, and is satisfied with his counsel's representation.

(Cr. ECF No. 23 at PageID 30-33.)

The United States Probation and Pretrial Services prepared a presentence investigation

report ("PSR"), which recommended a total offense level of 30 for Counts One and Two, and

criminal history category of VI. (PSR at 27.) The PSR calculated Bracey's advisory guideline range at 168 to 210 months of imprisonment because he was an armed career criminal pursuant to United States Sentencing Guidelines ("U.S.S.G.") § 4B1.4. (PSR at 27.) Bracey was also subject to a mandatory minimum sentence of fifteen years (one hundred eighty months) on Count One under 18 U.S.C. § 924(e)(1). (PSR at 27.) Defense counsel filed the following objections to the PSR:

Factual Objections

1.    Defendant objects to the references in paragraph 4 of the Report to a Clerke .32 caliber revolver. Defendant denies the ownership or possession of said weapon.

Guidelines Objections

Defendant objects to paragraph 14 of the Report. Defendant acknowledges that this objection will have no effect on the ultimate Guideline range, regardless it is Defendant's position that the only firearm he is responsible for was the .22 caliber revolver in the indictment to which Defendant pled, and which did not have an obliterated serial number.

Additionally Defendant asks the Court under U.S.S.G. § 5G1.3(c) to run the sentence in this case concurrently with his undercharged state term.

Non-Guideline Considerations:

Defendant's position is that there are numerous § 3553 factors that the court should consider, including his age and his extensive efforts to co-operate with the Government.

Conclusion:

Defendant submits that the Court in considering the provisions of 18 U.S.C. § 3553 should be sentenced to the low end of or below the appropriate Guideline range.

(Cr. ECF No. 39 at 1-2.)

At Bracey's request, the sentencing hearing was postponed on three occasions to allow more time for him to earn a motion pursuant to § 5K1.1. (Cr. ECF Nos. 24-25, 28-29, 32-33.) The Court held a sentencing hearing on June 6, 2011. (Cr. ECF No. 40.) During the sentencing hearing, the Court granted the United States' motion for Bracey to receive credit for acceptance of responsibility (Cr. ECF No. 46 at PageID 99-100), granted Bracey's request to strike the four-point enhancement for possession of a firearm with an altered or obliterated serial number (*id.* at PageID 100-02), considered Bracey's request to run his federal sentence concurrent to his undischarged state sentence (*id.* at PageID 126), and considered Bracey's efforts to assist the United States and the § 3553 factors (*id.* at PageID 106-10). The Court entered a judgment sentencing Bracey to imprisonment for one hundred eighty (180) months on Count One and one hundred twenty months on Count Two, to be served concurrently with each other and Shelby County Criminal Court case 10-06074, along with a three-year term of supervised release. (Cr. ECF Nos. 40, 42.) Bracey did not appeal.

## II.     STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 2255(a),

[a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

"A prisoner seeking relief under 28 U.S.C. § 2255 must allege either: (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (citation and internal quotation marks omitted). A

defendant has the burden of proving that he is entitled to relief by a preponderance of the evidence. *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006).

A § 2255 motion is not a substitute for a direct appeal. *See Bousley v. United States*, 523 U.S. 614, 621 (1998). "[N]onconstitutional claims that could have been raised on appeal, but were not, may not be asserted in collateral proceedings." *Stone v. Powell*, 428 U.S. 465, 477 n.10 (1976). "Defendants must assert their claims in the ordinary course of trial and direct appeal." *Grant v. United States*, 72 F.3d 503, 506 (6th Cir. 1996). This rule, however, is not absolute:

> If claims have been forfeited by virtue of ineffective assistance of counsel, then relief under § 2255 would be available subject to the standard of *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). In those rare instances where the defaulted claim is of an error not ordinarily cognizable or constitutional error, but the error is committed in a context that is so positively outrageous as to indicate a "complete miscarriage of justice," it seems to us that what is really being asserted is a violation of due process.

*Id.*

Constitutional claims that could have been raised on direct appeal, but were not, will be barred by procedural default unless the defendant demonstrates cause and prejudice sufficient to excuse his failure to raise those issues previously. *El-Nobani v. United States*, 287 F.3d 417, 420 (6th Cir. 2002) (withdrawal of guilty plea); *Peveler v. United States*, 269 F.3d 693, 698-99 (6th Cir. 2001) (new Supreme Court decision issued during pendency of direct appeal); *Phillip v. United States*, 229 F.3d 550, 552 (6th Cir. 2000) (trial errors). Alternatively, a defendant may obtain review of a procedurally defaulted claim by demonstrating his "actual innocence." *Bousley*, 523 U.S. at 622.

"[A] § 2255 motion may not be employed to relitigate an issue that was raised and considered on direct appeal absent highly exceptional circumstances, such as an intervening

change in the law." *Jones v. United States*, 178 F.3d 790, 796 (6th Cir. 1999); *see also DuPont v. United States*, 76 F.3d 108, 110 (6th Cir. 1996) (same).

After a § 2255 motion is filed, it is reviewed by the Court and, "[i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion . . . ." Rule 4(b), Rules Governing Section 2255 Proceedings for the United States District Courts ("Section 2255 Rules"). "If the motion is not dismissed, the judge must order the United States attorney to file an answer, motion, or other response within a fixed time, or to take other action the judge may order." *Id.* The movant is entitled to reply to the Government's response. Rule 5(d), Section 2255 Rules. The Court may also direct the parties to provide additional information relating to the motion. Rule 7, Section 2255 Rules.

"In reviewing a § 2255 motion in which a factual dispute arises, 'the habeas court must hold an evidentiary hearing to determine the truth of the petitioner's claims.'" *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007) (quoting *Turner v. United States*, 183 F.3d 474, 477 (6th Cir. 1999)). "'[N]o hearing is required if the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.'" *Id.* (quoting *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999)). Where the judge considering the § 2255 motion also presided over the criminal case, the judge may rely on his or her recollection of the prior case. *Blanton v. United States*, 94 F.3d 227, 235 (6th Cir. 1996); *see also Blackledge v. Allison*, 431 U.S. 63, 74 n.4 (1977) ("[A] motion under § 2255 is ordinarily presented to the judge who presided at the original conviction and sentencing of the prisoner. In some cases, the judge's recollection of the events at issue may enable him summarily to dismiss a § 2255 motion . . . .").

A claim that ineffective assistance of counsel has deprived a defendant of his Sixth Amendment right to counsel is controlled by the standards stated in *Strickland v. Washington*, 466 U.S. 668 (1984). To demonstrate deficient performance by counsel, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688.

> A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. [*Strickland*, 466 U.S.] at 689. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.*, at 687.

*Harrington v. Richter*, 131 S. Ct. 770, 787 (2011).

To demonstrate prejudice, a prisoner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.[1] "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

> It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." [*Strickland*, 466 U.S.] at 693, 104 S. Ct. 2052. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.*, at 687, 104 S. Ct. 2052.

*Richter*, 131 S. Ct. at 787-88; *see also id.* at 791-72 ("In assessing prejudice under *Strickland*, the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently. . . . The likelihood of a different result must be substantial, not just

---

[1] "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant." *Strickland*, 466 U.S. at 697. If a reviewing court finds a lack of prejudice, it need not determine whether, in fact, counsel's performance was deficient. *Id.*

conceivable." (citations omitted)); *Wong v. Belmontes*, 558 U.S. 15, 27 (2009) (per curiam) ("But *Strickland* does not require the State to 'rule out' [a more favorable outcome] to prevail. Rather, *Strickland* places the burden on the defendant, not the State, to show a 'reasonable probability' that the result would have been different." (citing *Strickland*, 466 U.S. at 694)).

"Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010).

> An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the *Strickland* standard must be applied with scrupulous care, lest "intrusive post-trial inquiry" threaten the integrity of the very adversary process the right to counsel is meant to serve. *Strickland*, 466 U.S., at 689-690, 104 S. Ct. 2052. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is "all too tempting" to "second-guess counsel's assistance after conviction or adverse sentence." *Id.*, at 689, 104 S. Ct. 2052; *see also Bell v. Cone*, 535 U.S. 685, 702, 122 S. Ct. 1843, 152 L. Ed. 2d 914 (2002); *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S. Ct. 838, 122 L. Ed. 2d 180 (1993). The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom. *Strickland*, 466 U.S., at 690, 104 S. Ct. 2052.

*Richter*, 131 S. Ct. at 788.

## III. ANALYSIS

Bracey alleges that counsel provided ineffective assistance by:

> (1) Failing to deliver a copy of the Rule 16 material;

> (2) Failing to request a pre-PSR to determine Bracey's potential exposure to sentence enhancement as an armed career criminal and the AUSA's position;

> (3) Failing to negotiate a reduction of charges or sentence ceiling based on Bracey's extensive knowledge of the Memphis drug market;

> (4) Failing to discuss Bracey's waiver of appellate rights;

(5) Failing to follow up on the Sept. 28, 2010, interview with agents and the AUSA; and

(6) Failing to follow up after a January 25, 2011, proffer session and address the Court when ATF agent Rick Barnes failed to meet with Bracey at the penal farm.

(ECF No. 1 at PageID 4-6.)[2]  Bracey also alleges that his violation of 18 U.S.C. § 922(g) failed to meet statutory criteria because he committed no act of violence or planned act.  (*Id.* at PageID 8.)  The United States has responded that Defendant's entire motion is without merit and should be denied.  (ECF No. 20 at PageID 185-91.)

### A.  <u>Failure to Deliver a Copy of the Rule 16 Material</u>

Bracey contends that his attorney, Daniel Johnson, failed to provide him with a copy of the Rule 16 discovery.  (ECF No. 1 at PageID 4.)  The United States responds that the allegation is "inaccurate" and "disingenuous."  (ECF No. 20 at PageID 186.)

On August 17, 2010, counsel filed a request for discovery pursuant to Fed. R. Crim. P. 16(a) and 26.2, *Brady v. Maryland*, 373 U.S. 83 (1963) and all other applicable rules and statutes.  (Cr. ECF No. 17.)  On August 23, 2010, the United States responded by providing "a copy of any statements made by [Bracey] to police regarding the criminal charges against him, Bracey's voluminous criminal history, a listing and/or photocopies of physical evidence including:

a.    Firearm as described in the indictment;

b.    Pawn ticket # 154871;

---

[2]  Bracey's § 2255 motion enumerates ten issues of ineffective assistance.  Four issues consist of factual support for the six issues set forth above.  Those factual allegations have been considered during the Court's analysis of the issues.

c.  Document captioned "Firearms Transaction Record", ATF Form 4473, wherein [Bracey] advises that he has never been convicted in any court of a felony;

d.  Fingerprint analysis card, matching [Bracey's] thumb print left on the pawn card with his RNI thumb print;

e.  Six (6) total pictures; two (2) pictures depict the firearm sold by [Bracey] to the pawn shop; two (2) pictures depict Project Safe Neighborhoods literature that was posted at the pawn shop near the exact location where [Bracey] first pawned the firearm and then attempted to buy it back;

f.  Certified copies of convictions; [and]

g.  Any other items listed in the Evidence Report, which I have enclosed for your convenience[.]

(Cr. ECF No. 18 at PageID 24-25.)  The discovery also included a copy of the test for latent prints and disclosure of testifying experts, along with the substance of their testimony.  (*Id.* at PageID 25.)

Defense counsel Johnson has provided an affidavit stating that he provided Bracey with copies of all documents produced by the United States pursuant to Fed. R. Crim. P. 16 and that he reviewed all materials related to the case with Bracey.  (ECF No. 21 at PageID 193.)  Johnson states that "[t]he facts of [Bracey's] case were straightforward and the evidence against [him was] significant."  (*Id.* at PageID 195.)  Based on the available evidence, as well as Bracey's status as an armed career criminal and resulting mandatory minimum sentence of one hundred eighty months, counsel proposed a strategy that included negotiating a plea agreement that included a recommendation for full credit for acceptance of responsibility and the possibility of a motion pursuant to § 5K1.1 based on Bracey's provision of reliable information.  (*See id.* at PageID 194-96; Cr. ECF No. 23 at 2.)

Bracey appeared before the Court to enter a plea of guilty and, when asked if he was fully satisfied with his counsel, his representation and his advice, Bracey responded, "Absolutely." (Cr. ECF No. 45 at PageID 72.) Bracey's conclusory allegation that he was not provided with copies of the discovery is not credible based on the record before the Court. The Rule 16 discovery and Bracey's extensive criminal history were the driving forces in the defense strategy. Attorney Johnson was forthcoming with the discovery and accurate about the consequences of Bracey entering a guilty plea versus going to trial. Bracey received great benefit from the agreement negotiated by counsel. Accordingly, Bracey has not established deficient performance on the part of his counsel Mr. Johnson.

Moreover, Bracey does not contend that his guilty plea was predicated on any misinformation or lack of information. Ineffective assistance of counsel based on incompetent advice to take a plea deal only amounts to constitutional error when prejudice is established. *Hill v. Lockhart*, 474 U.S. 52, 57-60 (1985). Such a showing requires an allegation that in the absence of counsel's alleged incompetence, the defendant "would have pleaded not guilty and insisted on going to trial." *Id.* at 60. Because Bracey has not alleged that he would have pleaded not guilty and proceeded to trial had he received the Rule 16 discovery, Bracey also cannot establish prejudice on these grounds. Accordingly, Bracey's first argument for ineffective assistance of counsel is without merit.

      **B.**      <u>**Failure to Request a Pre-PSR to Determine Bracey's Potential Exposure to Sentence Enhancement as an Armed Career Criminal and the AUSA's Position**</u>

Bracey next contends that counsel failed to request a pre-PSR to determine Bracey's potential exposure to sentence enhancement as an armed career criminal and the AUSA's position. (ECF No. 1 at PageID 4.) The United States responds that the function of a pre-PSR is

purely speculative in nature and, at the most, ancillary to a decision to plead guilty and to the advice of counsel. (ECF No. 20 at PageID 187.)

Bracey's voluminous criminal history and certified copies of convictions were provided in the Rule 16 discovery. (Cr. ECF No. 18.) The criminal history left no doubt that Bracey qualified as an armed career criminal. The resulting defense strategy of a plea agreement and potential motion pursuant to § 5K1.1 provided the only hope for a departure below the mandatory minimum sentence.

At the change of plea hearing, the Court advised Bracey that if he had three prior convictions for violent felonies or serious drug offenses, he could receive no less than 15 years in prison and not more than life. (Cr. ECF No. 45 at PageID 78.) Bracey stated under oath that he understood the statutory penalties and what could happen as a result of his guilty plea. (*Id.*) Bracey admitted that he and defense counsel had talked about how the advisory sentencing guidelines applied to his case. (*Id.* at PageID 79.) Bracey displayed no hesitation or indecision before entering his guilty plea. He displayed no displeasure with counsel's advice or performance. Bracey fails to disclose any specific information contained in the pre-PSR that was not disclosed in the Rule 16 discovery listing of his criminal history or certified copies of prior convictions. Counsel did not perform deficiently by failing to request an unnecessary, advisory report.

Additionally, Bracey cannot establish prejudice because he does not allege that he would have pled not guilty and insisted on proceeding to trial if he had been provided the pre-PSR. *See Hill*, 474 U.S. at 57-60. Accordingly, Bracey's second argument for ineffective assistance of counsel is without merit.

13

**C.** **Failure to Negotiate a Reduction of Charges or Sentence Ceiling Based on Bracey's Extensive Knowledge of the Memphis Drug Market; Failure to Follow up on the Sept. 28, 2010 Interview with Agents and the AUSA; and Failure to Follow up after a January 25, 2011 Proffer Session and Address the Court when ATF Agent Rick Barnes Failed to Meet with Bracey at the Penal Farm**

Bracey contends that counsel failed to negotiate a reduction of charges or sentence ceiling based on Bracey's extensive knowledge of the Memphis drug market and failed to follow up on interviews and proffer sessions with law enforcement and the Assistant United States Attorney. The United States responds that Bracey cannot demonstrate that counsel's performance was deficient. (ECF No. 20 at PageID 190.)

Bracey's allegations are not supported by the record. Counsel negotiated a plea agreement that provided Bracey with the opportunity to cooperate with the government, to provide information to the government, and, potentially, to receive a motion pursuant to U.S.S.G. §5K1.1. (Cr. ECF No. 23.) Counsel's affidavit states, in pertinent part:

> I advised Petitioner in regard to his status under the Armed Career Criminal Act and met with him on multiple occasions to discuss the possibility of his providing reliable information to the government in an effort to facilitate a 5K1 recommendation. In fact, we executed a proffer letter and met on September 28, 2010, and again on January 25, 2011, with then prosecuting attorney, Matthew Price, at the United States Attorney's Office. On both occasions information was provided by Petitioner to government agents and to my private investigator. Ultimately, all of the information provided by Petitioner to law enforcement failed to be of any use or lead to any investigations. Further, follow up investigations were performed by my private investigator which, in fact, corroborated the fruitless nature of Petitioner's information as reported by the government.

> I followed up with the U.S. Attorney's office after both meetings in order to ascertain the probability of a 5K1 motion at sentencing. Moreover, I discussed the value of Petitioner's information with AUSA Matthew Price and ultimately arranged for a second proffer session when it was confirmed that the September proffer had proved fruitless.

. . .

14

I explained to Petitioner that I was not in control of which facility he was to be housed. The Petitioner was interested in providing information he was privy to at the Shelby County Detention Center to federal agents. Unfortunately, this information was ultimately never pursued by federal agents.

. . . Further all parties, including ATF agent Rick Howard, bent over backwards to facilitate a 5K1 in this case, however, and as the court stated on June 6, 2011, at the sentencing hearing, time ran out.

(ECF No. 21 at PageID 194-95, ¶¶ 5-6. 8-9.)

During the sentencing hearing, counsel characterized Bracey's efforts to cooperate as "extraordinary" (Cr. ECF No. 46 at PageID 98) and the Assistant United States Attorney stated

Mr. Bracey, . . . from the moment of the commencement of the case through his attorney has shown acceptance as to what he has done. He came forward, came to the government on a number of occasions, and while Mr. Bracey is to be commended for all of his efforts, I do want the court to note that the ATF agent associated with this case, Rick Howard, also deserves some credit for the amount of times we met with Mr. Bracey. I think I met with Mr. Bracey and Mr. Johnson and heard from them and received information from them more times than I have for any other defendant possibly combined in all of us trying to get Mr. Bracey a 5K1. The reason we were trying to work so hard towards that is because the information Mr. Bracey was providing was good information. We knew it was good information. He would give us addresses, locations, targets, individuals. These were all subjects that, for lack of better terms, checked out. The information sometimes was stale. The information sometimes was historical in nature. The information sometimes was simply not actionable, but there's nothing in the reams of information that Mr. Bracey provided to us that ever was deemed to be incomplete or unreliable or untruthful. I do want the court to know when the government is making its recommendation, that is playing a huge part in the government's bottom line recommendation to the court. Mr. Bracey tried, he tried very hard. While it didn't bear any fruit, the effort should be recognized and, again, the effort by the ATF should also be recognized and so with that said, Your Honor I will look to Mr. Bracey's criminal history. . . .

(*Id.* at PageID 106-108.)

The record establishes the extraordinary effort by Bracey, the attorneys and law enforcement agents in their attempt to facilitate a § 5K1.1. Accordingly, Bracey has not

established that Defense counsel's performance was deficient with regard to his efforts in securing a § 5K1.1 reduction in sentence for Bracey.

### D. Failure to Discuss Bracey's Waiver of Appellate Rights

Bracey contends that defense counsel "never discussed any waiver of future appellate rights connected with his plea of guilty." (ECF No. 1 at PageID 5.) The United States responds that counsel's affidavit and the transcript of sentencing contradict this claim. (ECF No. 20 at PageID 189.)

Counsel states by affidavit that:

> I reviewed, as is consistent with my legal practice, the whole of the government's proposed plea agreement and I outlined both the ramifications and benefits of the Petitioner's waiving his right to appeal in his case. The plea agreement was read in open Court and the Petitioner unequivocally and knowingly waived his right to appeal.

(ECF No. 21 at PageID 194, ¶ 7.)

During the change of plea hearing, the Court asked Bracey if he had an opportunity to read and discuss the plea agreement with his counsel before he signed it and if he understood the terms of the plea agreement and Bracey responded, "Yes, Your Honor" to both questions. (Cr. ECF No. 45 at PageID 72-73.) AUSA Price recited the terms of the plea agreement, including the appellate waiver. (*Id.* at PageID 73-76.) The Court asked Bracey, "Do you understand that by entering into this plea agreement and entering a plea of guilty, you have agreed to waive or give up your right to collaterally attack all or part of the sentence to this case?" (*Id.* at PageID 80.) Bracey responded, "Yes, Your Honor." (*Id.*)

Rule 11 of the Federal Rules of Criminal Procedure requires that a district court verify that a defendant's plea is voluntary and that the defendant understands his or her applicable constitutional rights, the nature of the crime charged, the consequences of the guilty plea, and the

factual basis for concluding that the defendant committed the crime charged. *United States v. Goldberg*, 862 F.2d 101, 106 (6th Cir. 1988); Fed. R. Crim. P. 11. The Court complied with Rule 11 in every aspect. Additionally, with respect to Bracey's express waiver, the transcript of the plea colloquy shows that the Court complied with Rule 11(b)(1)(N), which provides that, prior to accepting a guilty plea, the court must inform the defendant of the appellate-waiver provision in the plea agreement and must determine if the defendant understands it. In the instant case, the Court explained the appellate waiver provision as follows:

> I'm required to tell you about your right to appeal, and I know you have agreed to waive it, but I'm going to go through and talk about it. You do actually have a right to appeal the sentence that has been imposed in this case, and you have a right to appeal your conviction if you believe that your guilty plea was somehow unlawful or involuntary or if there's some other fundamental defect in the proceedings.

> You also have a statutory right to appeal the sentence in the case under certain circumstances, particularly if you believe the sentence was contrary to law.

> In this case, you agreed to give up those rights, but, of course, you don't give up the right to appeal ineffective assistance of counsel or prosecutorial misconduct, but you have to file notices if you want to preserve those and pursue them.

> With very few exceptions, any notice of appeal must be filed within ten days of the judgment being entered in this case. The judgment will be entered today, this is the 6th day of June, 2011. This notice of a right to appeal is given to you pursuant to Rule 32 of the Federal Rules of Criminal Procedure.

> I'm required to advise you that if you request, the Clerk[] of the court will prepare and file forthwith a notice of appeal on your behalf. The courtroom deputy is handing to you and your counsel a form which you may use to file your own notice of appeal in this case, including any notice of appeal as to ineffective assistance of counsel or prosecutorial misconduct, of which the court would observe that there's no indication that there's any basis for that. If you're not able to pay the cost of an appeal, you may apply for leave to appeal in forma pauperis. If you make that request, the Clerk[] will prepare and file a notice of appeal on your behalf.

(Cr. ECF No. 46 at PageID 129-30.) The Court then asked Bracey whether he intended to appeal this case. (*Id.*) Bracey responded, "No, sir, Your Honor." (*Id.*)

Although Bracey claims that his attorney was "ineffective" and consequently, his plea was not "voluntary", the Sixth Circuit Court of Appeals held in *Ramos v. Rogers*, 170 F.3d 560, 565 (6th Cir. 1999) that "the trial court's proper plea colloquy cured any misunderstanding he may have had about the consequences of his guilty plea." *See also Baker v. United States*, 781 F.2d 85, 91 (6th Cir. 1985) (a "defendant's plea agreement consists of the terms revealed in open court"). "Entry of a plea of guilty is not some empty ceremony, and statements made to a federal judge in open court are not trifles that defendants may elect to disregard." *United States v. Stewart*, 198 F.3d 984, 987 (7th Cir. 2004) (pointing out that "[t]he purpose of a Rule 11 colloquy is to expose coercion or mistake, and the district judge must be able to rely on the defendant's sworn testimony at that hearing."). "Solemn declarations in open court carry a strong presumption of verity." *Blackledge*, 431 U.S. at 74.

The United States Supreme Court has held that:

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.

*Tollett v. Henderson*, 411 U.S. 258, 267 (1973). In *Smith v. United States*, 348 F.3d 545, 552 (6th Cir. 2003), the Sixth Circuit Court of Appeals explained that:

> The decision to plead guilty—first, last, and always—rests with the defendant, not his lawyer. Although the attorney may provide an opinion on the strength of the government's case, the likelihood of a successful defense, and the wisdom of a chosen course of action, the ultimate decision of whether to go to trial must be made by the person who will bear the ultimate consequence of a conviction.

The record reflects that Bracey, after reviewing the terms of the written plea offer with his retained counsel, agreed to such terms and signed the plea agreement. (*See id.* at 72-73; ECF No. 21 at 2.) As part of the plea bargain, Bracey agreed to expressly waive certain rights. "'[W]aiver is the intentional relinquishment or abandonment of a known right.'" *United States v. Sheppard*, 149 F.3d 458, 461 n.3 (6th Cir. 1998) (citing *United States v. Olano*, 507 U.S. 725, 733 (1993) (citations omitted)). Accordingly, the Court finds that Bracey was aware of and fully understood the ramifications of Bracey's waiver of appeal, and that his waiver of appeal was voluntary. *See United States v. Sykes*, 292 F.3d 495, 498 (6th Cir. 2002) ("informed waivers are valid"); *United States v. McGilvery*, 403 F.3d 361, 363 (6th Cir. 2005) (enforcing voluntary waiver by defendant). Bracey's arguments with regard to waiver of appellate review are without merit.

For the reasons stated above, Bracey's claims for ineffective assistance of counsel are DENIED.

E.     **Whether Bracey's Violation of 18 U.S.C. § 922(g) Failed to Meet Statutory Criteria Because He Committed No Act of Violence or Planned Act**

In addition to claims of ineffective assistance of counsel, Bracey also asserts that his violation of 18 U.S.C. § 922(g) failed to meet statutory criteria because he committed no act of violence or planned act. (*Id.* at PageID 8.) The United States responds that "[t]he statute requires neither a *mens rea* involving premeditation nor an *actus reus* involving violence." (ECF No. 20 at PageID 190.)

The offense of being a felon in possession of a firearm under 18 U.S.C. § 922(g) consists of three elements: "(1) the defendant had a previous felony conviction; (2) the defendant knowingly possessed the firearm specified in the indictment; and (3) the firearm traveled in or

affected interstate commerce." *United States v. Campbell*, 549 F.3d 364, 374 (6th Cir. 2008). The government must, at a minimum, "present evidence to show some connection or nexus between the defendant and the firearm, which can be established by a showing that the defendant had *knowledge and access* . . . [to the] firearm." *United States v. Bailey*, 553 F.3d 940, 945 (6th Cir. 2009) (citing *United States v. Jameson*, 478 F.3d 1204, 1209 (10th Cir. 2007) (internal quotation marks omitted)).

At the change of plea hearing, Bracey testified that he "was waiting for a check to come in for a job [he] had done, and [he] took the gun to a pawn shop to get some money to hold [him] over until the check arrived, and when the check arrived, [he] went to get it back." (Cr. ECF No. 45 at PageID 85.) Bracey also told the Court that he had been convicted several times of felonies and that the gun belonged to a friend. (*Id.* at PageID 85-86.)

AUSA Price related the government's proof, stating "on July 30th, 2009, Mr. Bracey took an Iver Johnson's revolver to Reliable Pawn" "which is located at 3807 Summer Avenue" "along with assorted fishing gear, and he used a valid Tennessee driver's license as his ID. As a part of the pawn transaction, Mr. Bracey left a thumbprint. He affixed his name – he signed his name, and he affixed a fingerprint to the pawn shop ticket which was 15487." (*Id.* at PageID 86-87.)

Price stated further:

A week later, on August 6th, 2009, Mr. Bracey returned to Reliable Pawn and attempted to buy back or pawn back the same firearm that he had pawned the previous week. This time, though, to receive the gun back, he had to fill out an ATF form 4473, and in doing so, one of the questions was whether or not he was a convicted felon. In trying to buy back or pawn back the firearm, Mr. Bracey used an Arkansas driver's license as identification, and he signed his name to this application. One of the questions which was a material question was whether or not he had been convicted of a felony. He answered no. In reality, though, Your Honor, Mr. Bracey has been convicted of twenty plus felonies, and so this was a

false statement, was a material false statement because had he answered yes, he would not have been able to get the gun back, the firearm back, and that Mr. Bracey knew the statement was false and was likely to deceive the pawn shop owner. So Mr. Bracey was not allowed to get the gun back, and his request was denied and he left Reliable Pawn. When compared by a Shelby County Sheriff's Department, Bureau of Identification, a fingerprint expert positively matched the fingerprint left from the original pawn shop card with the fingerprint from one of Mr. Bracey's earlier criminal convictions.

Again, Your Honor, we would have asked that all of the above – the court to take judicial notice that all of the above occurred in the Western District of Tennessee. A records check was done on Mr. Bracey, it was found that he was a multi-time – twenty plus time convicted felon. The firearm was examined by the Bureau of Alcohol, Tobacco & Explosives, it was determined that the firearm traveled in interstate commerce prior to coming into Mr. Bracey's possession on July 30, 2009.

(*Id.* at PageID 87-89.)

The Court then asked Bracey if he had any objection or correction to the statement of facts. (*Id.* at PageID 89.) Bracey replied, "No, sir" and entered his plea of guilty. (*Id.*) The facts of this case, which were admitted by Bracey, are sufficient to establish a violation of 18 U.S.C. § 922(g). This issue is without merit and is DENIED.

## IV.    CONCLUSION

The motion, together with the files and record in this case "conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). Defendant's conviction and sentence are valid, and his Motion to Vacate (ECF No. 1) is DENIED. Judgment shall be entered for the United States.

## V.    APPELLATE ISSUES

Pursuant to 28 U.S.C. § 2253(c)(1), the district court is required to evaluate the appealability of its decision denying a § 2255 motion and to issue a certificate of appealability ("COA") "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see also* Fed. R. App. P. 22(b). No § 2255 movant may appeal without this certificate.

The COA must indicate the specific issue or issues that satisfy the required showing. 28 U.S.C. § 2253(c)(2), (3). A "substantial showing" is made when the movant demonstrates that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (citation and internal quotation marks omitted); *see also Henley v. Bell*, 308 F. App'x 989, 990 (6th Cir. 2009) (per curiam) (same). A COA does not require a showing that the appeal will succeed. *Miller-El*, 537 U.S. at 337; *Caldwell v. Lewis*, 414 F. App'x 809, 814-15 (6th Cir. 2011). Courts should not issue a COA as a matter of course. *Bradley v. Birkett*, 156 F. App'x 771, 773 (6th Cir. 2005) (quoting *Miller-El*, 537 U.S. at 337).

In this case, for the reasons previously stated, Defendant's claims lack substantive merit and, he cannot present a question of some substance about which reasonable jurists could differ. The Court therefore DENIES a certificate of appealability.

The Sixth Circuit has held that the Prison Litigation Reform Act of 1995, 28 U.S.C. § 1915(a)-(b), does not apply to appeals of orders denying § 2255 motions. *Kincade v. Sparkman*, 117 F.3d 949, 951 (6th Cir. 1997). Rather, to appeal *in forma pauperis* in a § 2255 case, and thereby avoid the appellate filing fee required by 28 U.S.C. §§ 1913 and 1917, the prisoner must obtain pauper status pursuant to Fed. R. App. P. 24(a). *Kincade*, 117 F.3d at 952. Rule 24(a) provides that a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit. Fed. R. App. P. 24(a)(1). Rule 24(a), however, also provides that, if the district court certifies that an appeal would not be taken in good faith, or otherwise denies leave to appeal *in forma pauperis*, the prisoner must file his motion to proceed *in forma pauperis* in the appellate court. *See* Fed. R. App. P. 24(a) (4)-(5).

In this case, for the same reasons the Court denies a certificate of appealability, the Court determines that any appeal would not be taken in good faith. It is therefore CERTIFIED, pursuant to Fed. R. App. P. 24(a), that any appeal in this matter would not be taken in good faith, and leave to appeal *in forma pauperis* is DENIED. If Defendant files a notice of appeal, he must also pay the full $505 appellate filing fee (*see* 28 U.S.C. §§ 1913, 1917) or file a motion to proceed *in forma pauperis* and supporting affidavit in the Sixth Circuit Court of Appeals within thirty (30) days (*see* Fed. R. App. P. 24(a) (4)-(5)).

Additionally, it is ORDERED that the Clerk of Court update the docket with Bracey's current address.

**IT IS SO ORDERED,** this 17th day of July 2015.

/s/ Jon P. McCalla
JON PHIPPS MCCALLA
UNITED STATES DISTRICT JUDGE